UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Commerce & Industry Insurance Co. and Chartis Property Casualty Co., | Civil No. 13-854 (DWF/TNL) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Great American Insurance Co., | |
| Defendant. | |

Nicholas H. Jakobe, Esq., and Leon R. Erstad, Esq., Erstad & Riemer, P.A., counsel for Plaintiffs.

Jeanne H. Unger, Esq., and Shanda K. Pearson, Esq., Bassford Remele, P.A., counsel for Defendant.

# INTRODUCTION

This matter is before the Court on cross-motions for summary judgment by Plaintiffs Commerce & Industry Insurance Co. ("Commerce") and Chartis Property Casualty Co. ("Chartis") (Doc. No. 22) and Defendant Great American Insurance Co. ("Great American") (Doc. No. 24). For the reasons stated below, the Court denies Plaintiffs' motion and grants in part and denies in part Defendant's motion.

# BACKGROUND

## I. The Accident

On April 17, 2011, Arnold S. Paster ("Paster") was driving a vehicle owned by Paster Enterprises, LLC ("Paster Enterprises"), when he collided with a motorcycle driven by Jerome G. Wind ("Wind") in St. Paul, Minnesota. (Doc. No. 27 ("Jakobe Aff.") ¶ 3, Ex. E at 35-36.) As a result of the accident, Wind sustained serious injuries. (*Id.*) Following the accident, Wind sought coverage for his injuries under all applicable insurance policies. (Jakobe Aff. ¶ 3, Ex. M at 331-36.)

## II. The Insurance Policies

At the time of the accident, the vehicle owned by Paster Enterprises was insured under a commercial automobile policy issued by Phoenix Insurance Co. ("Phoenix") ("Phoenix Policy") and a commercial umbrella policy issued by Great American ("Great American Policy"). (Jakobe Aff. ¶ 3, Ex. F ("Phoenix Policy"); Jakobe Aff. ¶ 3, Ex. G ("Great American Policy").) The driver of the vehicle, Paster, was insured under a personal automobile policy issued by Commerce ("Commerce Policy") and a personal excess liability policy issued by Chartis ("Chartis Policy"). (Jakobe Aff. ¶ 3, Ex. H ("Commerce Policy"); Jakobe Aff. ¶ 3, Ex. I ("Chartis Policy").)

### A. The Phoenix Policy

The Phoenix Policy, number Y-810-868K1683-PHX-10, provides commercial automobile liability coverage for any vehicle owned by Paster Enterprises, with a policy limit of $1,000,000. (Phoenix Policy at 39, 50.) The Phoenix Policy provides the following coverage: "We will pay all sums an 'insured' legally must pay as

damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" (*Id.* at 57.)  The term "insured" is defined to include the named insured, Paster Enterprises, and "anyone else while using with your permission a covered 'auto' you own, hire, or borrow." (*Id.*)  As a condition to automobile liability coverage, the Phoenix Policy provides:

>    5.   Other Insurance
>         a.   For any covered "auto" you own, this Coverage Form provides primary insurance.  For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance.

(*Id.* at 64.)

### B.   The Great American Policy

The Great American Policy, number UM1235734, provides commercial umbrella liability coverage to Paster Enterprises, with a policy limit of $25,000,000.  (Great American Policy at 112.)  The "Insuring Agreement" of the Great American Policy requires Great American to "pay on behalf of the 'insured' those sums in excess of the 'Retained Limit' that the 'insured' becomes legally obligated to pay by reason of liability imposed by law or assumed by the 'insured' under an 'insured contract' because of 'bodily injury,'. . . caused by an 'occurrence' happening anywhere." (*Id*. at 120.)  The term "insured" is defined to include permissive drivers of vehicles owned by Paster Enterprises.  (*Id.* at 117-18.)  The Great American Policy contains an "Auto Liability – Following Form" endorsement ("Auto Liability Endorsement"), which provides:

>The following exclusion is added to Section IV – EXCLUSIONS:
>
>Any liability arising out of the ownership, maintenance, operation, use, "loading" or "unloading" of any "auto," except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.
>
>This endorsement does not change any other provision of the policy.

(*Id.* at 142.)  The Phoenix Policy is listed in the "Schedule of Underlying Insurance." (*Id.* at 112, 116.)  The Great American Policy also includes a "Non-Business Activities Exclusion" endorsement, which provides:

>The following exclusion is added to Section IV – EXCLUSIONS:
>
>Any liability for or arising out of any domestic or non-business activities of any "Insured."
>
>This endorsement does not change any other provision of the policy. (*Id.* at 154.)

Finally, as a condition to coverage, the Great American Policy provides:

>J.   Other Insurance
>   If other insurance applies to a loss that is also covered by this policy, this policy will apply excess of the other insurance.  Nothing herein will be construed to make this policy subject to the terms, conditions, and limitations of such other insurance.  However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

(*Id.* at 131.)

### C.   The Commerce Policy

The Commerce Policy, number PCG0002873569, provides personal automobile liability coverage to Paster, with a policy limit of $500,000 per accident. (Commerce Policy at 214.)  The Commerce Policy requires Commerce to "pay damages for Bodily Injury or Property Damage for which any insured becomes legally responsible because of

4

an auto accident." (*Id*. at 238.) As a condition to coverage, the "Other Insurance" clause of the Commerce Policy provides:

> If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own . . . shall be excess over any other collectible insurance, including physical damage insurance provided under this or any other policy.

(*Id.* at 240.)

### D.  The Chartis Policy

The Chartis Policy, number PCG0002873569, provides personal excess liability coverage to Paster, with a policy limit of $5,000,000. (Chartis Policy at 295.) The Chartis Policy requires Chartis to "cover damages an insured person is legally obligated to pay [for] bodily injury or property damage . . . resulting from an insured person's use of a . . . borrowed auto." (*Id.* at 303.) The Chartis Policy further provides that Chartis "will provide this coverage in excess of any underlying insurance that applies to these damages . . . [and] [i]f no underlying coverage exists, we will pay total damages." (*Id.*) Finally, as a condition to coverage, the "Other Insurance" clause of the Chartis Policy provides: "This policy shall apply as excess over any other insurance, except when the insurance is specifically written to apply in excess of this policy." (*Id.* at 309.)

## III.  Procedural History

On April 12, 2013, Commerce and Chartis commenced this declaratory judgment action against Great American to determine the scope and priority of the Great American Policy coverage for Wind's claims arising from the accident. (Doc. No. 1 ("Compl.").)

5

In the Complaint, Plaintiffs request the following declaratory relief: (1) a declaration that the Great American Policy provides coverage to Paster Enterprises and Paster for any claims made by Wind arising from the accident and for any damages arising from the accident in excess of the Phoenix Policy's $1,000,000 coverage limit; (2) a declaration that Great American is obligated to defend and indemnify Paster Enterprises and Paster for any claims made by Wind arising from the accident; (3) a declaration that the Commerce Policy is in excess to the Great American Policy coverage; and (4) a declaration that the Chartis Policy is in excess to the Great American Policy coverage. (*Id.* at 7.) Plaintiffs and Defendant now move for summary judgment on all claims. (Doc. Nos. 22, 24.)

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the evidence, and the inferences that may be reasonably drawn from the evidence, in the light most favorable to the nonmoving party. *Weitz Co. v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009). However, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.   Great American Policy Coverage

The motions before the Court turn on whether the Great American Policy obligates Great American to provide coverage for the accident in which Wind was injured. The interpretation of that policy is a matter of state law, and the parties do not dispute that Minnesota law applies in this diversity action. *See Progressive N. Ins. Co. v. McDonough*, 608 F.3d 388, 390 (8th Cir. 2010) ("Minnesota law applies, as Minnesota is the forum state and neither party has raised a choice-of-law claim.").

Under Minnesota law, "[i]nterpretation of an insurance policy is a question of law." *Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn. 2006). "If the language of an insurance contract is unambiguous, it must be given its plain and ordinary meaning . . . . But if the language is ambiguous, it will be construed against the insurer, as drafter of the contract." *Id.* The language of an insurance policy should be construed as a whole and all of its provisions, including endorsements and exclusions, should be read together. *See Metro. Airports Comm'n v. Noble*, 763 N.W.2d

639, 645 (Minn. 2009); *Haarstad v. Graff*, 517 N.W.2d 582, 584 (Minn. 1994). "Where provisions of the policy conflict with an endorsement or rider, the provision of the endorsement governs." *Bobich v. Oja*, 104 N.W.2d 19, 20-21 (Minn. 1960); *see also Auto Club Ins. Ass'n v. States Sentry Ins.*, 683 F.3d 889, 891 (8th Cir. 2012) ("Specific provisions in a contract govern over more general provisions.")  Therefore, to determine whether the Great American Policy obligates Great American to provide coverage for Wind's claims arising from the accident, the Court looks to the policy terms and endorsement provisions.

Great American does not dispute that, if the main text of the Great American Policy—the Insuring Agreement—were to stand on its own, Great American would be obligated to provide coverage for Wind's claims arising from the accident.  Under the terms of the Insuring Agreement, Great American agreed to pay "those sums in excess of the 'Retained Limit' that the 'insured' becomes legally obligated to pay by reason of liability imposed by law or assumed by the 'insured' under an 'insured contract' because of 'bodily injury.'"  (Great American Policy at 120.)  According to the definitions section of the policy, the term "insured" includes Paster Enterprises and permissive drivers of vehicles owned by Paster Enterprises.  (*Id.* at 117-18.)  The parties do not dispute that Paster was a permissive driver of the vehicle.  Therefore, because Paster qualifies as an "insured," these provisions in the main text of the Great American Policy, without consideration of any policy endorsements, would provide liability coverage to Paster Enterprises and Paster for Wind's claims arising from the accident.

However, the Court must also consider the relevant policy endorsement provisions, namely, the Auto Liability Endorsement and the Non-Business Activities Exclusion. The parties do not dispute that the terms of the Auto Liability Endorsement, on their own, obligate Great American to provide auto liability coverage for the Paster Enterprises vehicle that was involved in the accident. However, the parties strongly dispute the meaning and effect of the Non-Business Activities Exclusion. Under the terms of that endorsement, which "does not change any other provision of the policy," "[a]ny liability for or arising out of any domestic or non-business activities of any 'Insured'" is excluded from coverage. (*Id.* at 142.)

Plaintiffs contend that the Non-Business Activities Exclusion cannot limit the coverage provided under the Insuring Agreement or the Auto Liability Endorsement. Specifically, Plaintiffs argue that the Non-Business Activities Exclusion has no effect on the other policy provisions because the exclusion expressly states, "[t]his endorsement does not change any other provision of the policy." (*Id.*) Plaintiffs further argue that the Auto Liability Endorsement follows the form of the Phoenix Policy, and because the Phoenix Policy does not contain an exclusion of non-business activities, the Great American Policy's Non-Business Activities Exclusion does not apply to the accident.

Defendant, on the other hand, argues that the Non-Business Activities Exclusion precludes coverage for the accident because Paster was using the vehicle for personal activities at the time of the accident, and the exclusion bars coverage for liability arising out of any non-business activity. Defendant further argues that the Non-Business Activities Exclusion supersedes the Auto Liability Endorsement because the Auto

9

Liability Endorsement unambiguously states that "[t]his endorsement does not change any other provision of the policy" and, therefore, cannot change the Non-Business Activities Exclusion. (*Id.*) Finally, Defendant contends that the Auto Liability Endorsement's follow-form coverage of the underlying Phoenix Policy is subject to the terms of the Non-Business Activities Exclusion because follow-form clauses do not override exclusions contained elsewhere in the same policy.

The Court concludes that the plain language of the Non-Business Activities Exclusion excludes from coverage any liability arising from the non-business activities of an "insured" under the Great American Policy. Contrary to the interpretation advocated by Plaintiffs, the qualifying phrase, "[t]his endorsement does not change any other provision of the policy," does not negate the exclusion's effect on the other policy provisions. Instead, the qualifying phrase contemplates that other policy provisions, including the Insuring Agreement and the Auto Liability Endorsement, remain in effect, except to the extent that they provide liability coverage for non-business activities. To adopt Plaintiffs' proposed interpretation would render the Non-Business Activities Exclusion superfluous and meaningless.[1] *See Chergosky v. Crosstown Bell*, 463 N.W.2d 522, 526 (Minn. 1990) (holding that courts must presume that the parties intended the language used to have effect and avoid an interpretation that would render a provision

---

[1] In addition, the Court concludes that Plaintiffs' reading of the qualifying phrase is unreasonable, and therefore does not create an ambiguity. *See Carlson v. Allstate Ins. Co.*, 749 N.W.2d 41, 45 (Minn. 2008) (explaining that a policy is ambiguous if its language "is susceptible to two or more *reasonable* interpretations") (emphasis added).

meaningless).  Furthermore, the terms of the Non-Business Activities Exclusion are not preempted by the more general "follow-form" terms in the Auto Liability Endorsement because "[s]pecific provisions in a contract govern over more general provisions."  *Auto Club Ins. Ass'n*, 683 F.3d at 891.  Thus, the Court concludes that coverage for non-business activities is precluded under the terms of the Non-Business Activities Exclusion.

Therefore, with the policy provisions thus construed, the Court must consider whether the record demonstrates that Paster was operating the vehicle for "non-business activities."  Defendant submits an affidavit and accompanying claim note of Sharon Wallace, the Great American claim specialist assigned to the claim file for the accident, and an affidavit of Howard Paster, the current president of Paster Enterprises and nephew to Paster, to establish that Paster was using the vehicle for non-business activities.  (*See* Doc. No. 32 ("Wallace Aff."); Doc. No. 31 ("Paster Aff.").)  In her affidavit, Sharon Wallace states that she authored the claim note and that all claim notes are drafted in accordance with Great American's regularly conducted business of "obtaining, accurately documenting, and maintaining relevant information about claims made under insurance policies issued by Great American."  (Wallace Aff. ¶¶ 2-3.)  The accompanying claim note provides:

> Spoke with Mr. Arnold Paster last night and he is not in any way affiliated with Paster Enterprises, he is not an officer, employee, board member, owner, director.  He was not performing any duties for Paster Enterprises.  He was visiting family.  He owns property of his own in town and his mother lives in one of the buildings that he owns.  He doesn't remember exactly what he was doing at the time of the loss but it wasn't work. . . .

11

(Wallace Aff. ¶ 1, Ex. A.)  In Howard Paster's affidavit, he avers that "Arnold Paster was not an employee, officer, director, partner, or agent of Paster Enterprises LLC, or any of its affiliated companies . . . nor did he otherwise engage in business activities on behalf of those entities."  (Paster Aff. ¶ 5.)  According to Defendant, these affidavits and the accompanying claim note show that Paster was using the vehicle owned by Paster Enterprises for non-business activities at the time of the accident.

      Plaintiffs do not present any evidence to rebut Defendant's position that Paster was not involved in business activities at the time of the accident.  Instead, Plaintiffs challenge the evidence relied upon by Defendant in support of its motion.  Specifically, Plaintiffs argue that the claim note is inadmissible hearsay and that Howard Paster cannot swear as to what business Arnold Paster may have been conducting at the time of the accident.  Therefore, Plaintiffs argue that Defendant has failed to provide admissible evidence to show that Paster was using the vehicle for non-business activities.

      Although Plaintiffs correctly assert that the claim note prepared by Sharon Wallace does not constitute admissible evidence that may be considered on a motion for summary judgment because the note contains hearsay statements that do not fall within an exception to the hearsay rule, *see Jenkins v. Winter*, 540 F.3d 742, 748 (8th Cir. 2008), the Court does not consider the claim note in reaching its conclusion.  Moreover, contrary to Plaintiffs' assertions, Howard Paster, as a longtime employee and current president of Paster Enterprises, can certainly testify as to whether Paster was involved in business activities on behalf of Paster Enterprises.  (*See* Paster Aff. ¶ 1.)

The Court concludes that there is no genuine dispute of fact as to whether Paster was using the vehicle for business activities at the time of the accident. Both affidavits submitted by Defendant state that Paster was never employed by or affiliated with Paster Enterprises. Plaintiffs do not dispute these statements or offer any evidence to the contrary. In addition, Howard Paster's affidavit states that Arnold Paster did not engage in business activities on behalf of Paster Enterprises. Again, Plaintiffs have provided no evidence to contradict this statement. Therefore, the Court finds that there is no material dispute of fact as to whether Paster was using the vehicle for "non-business activities" and that the record shows that Paster was not using the vehicle for business activities. For these reasons, the Court concludes that the Non-Business Activities Exclusion applies to the facts in this case. Accordingly, the Court grants summary judgment in favor of Defendant and against Plaintiffs on Plaintiffs' coverage claims.

### III.  Priority of Coverage

Because the Court finds that the Great American Policy does not provide any coverage for the accident, the Court does not need to address Plaintiffs' priority of coverage claims. Therefore, the Court denies as moot both Plaintiffs' and Defendant's motions for summary judgment with respect to Plaintiffs' priority of coverage claims.

### ORDER

Based on the foregoing, and the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion for Summary Judgment (Doc. No. [22]) is **DENIED**.

2. Defendant's Motion for Summary Judgment (Doc. No. [24]) is **GRANTED IN PART** and **DENIED IN PART AS MOOT** as follows:

    a. The Court grants summary judgment in favor of Defendant with respect to Plaintiffs' coverage claims.

    b. The Court denies as moot summary judgment with respect to Plaintiffs' priority of coverage claims.

3. Plaintiffs' Complaint (Doc. No. [1]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: December 1, 2014            s/Donovan W. Frank
                                          DONOVAN W. FRANK
                                          United States District Judge